# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| DONNETTA E. DOTSON,<br>Plaintiff, | Case No. 1:16-cv-680<br>Dlott, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Donnetta Dotson brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 10) and the Commissioner's response in opposition (Doc. 15).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in July 2012, alleging disability since March 13, 2009 due to a learning disability. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through a non-attorney representative, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Larry A. Temin. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On March 2, 2015, the ALJ issued a decision denying plaintiff's applications. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since March 13, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: a mood disorder; an anxiety disorder; borderline intellectual functioning; and a learning disorder NOS (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] is able to perform only simple, repetitive tasks. She is able to understand, remember, and carry out only short and simple instructions. She cannot interact with the general public, and her job should not require more than superficial interaction with coworkers and supervisors. She cannot be subject to an inflexible work pace or be required to work at a rapid production-rate pace. Her job should not require more than ordinary and routine changes in work setting or duties. Her job should not require more than simple reading, writing, or math. Further, because of possible side effects of medication, [plaintiff] should not work at unprotected heights or around hazardous machinery.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1] Plaintiff's past relevant work was as a nurse's aide, a medium, semi-skilled position; a van driver, a light, semi-skilled position; a cashier, a light, unskilled position; a customer service representative, a light, semi-skilled

3

7. The [plaintiff] was born [in] 1981 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 13, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-30).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

position; and a bus monitor, a light, semi-skilled position. (Tr. 28, 47-51, 69-72).

[2] The ALJ relied on the VE's testimony to find that plaintiff is able to perform representative unskilled jobs such as packer (1,000 jobs regionally; 80,000 jobs nationally), cleaner (1,200 jobs regionally; 180,000 jobs nationally), and materials handler (1,000 jobs regionally; 150,000 jobs nationally). (Tr. 29, 73-74).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Error**

On appeal, plaintiff raises a single issue: whether the ALJ erred by failing to find that she meets the criteria for intellectual disability under Listing 12.05C. (Doc. 10 at 8). Plaintiff argues that substantial evidence does not support the ALJ's determination that she did not have a valid IQ score between 60 and 70. (*Id.* at 8-9). Further, plaintiff contends that substantial evidence does not support the ALJ's conclusion that plaintiff does not have the required deficits in adaptive functioning. (*Id.* at 9-10). Finally, plaintiff argues that her anxiety and depression constitute non-related severe impairments for purposes of Listing 12.05C. (*Id.* at 10).

The version of Listing 12.05 in effect at the time of the ALJ's decision contains an introductory paragraph with the diagnostic description of "intellectual disability" and four sets of

5

criteria set forth in paragraphs (A)-(D). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05 provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet Listing 12.05 for intellectual disability, the impairment must satisfy both the diagnostic description and any one of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)). In satisfying the diagnostic description for intellectual disability, a claimant must demonstrate: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) such deficits in adaptive functioning initially manifested before age 22. *Id*.

Despite discounting plaintiff's full scale IQ score of 56 in July 2013 as inconsistent with past results, the ALJ nevertheless determined that plaintiff's full scale IQ score of 70 in August 2001 was sufficient to meet the IQ score requirement of Listing 12.05C. (Tr. 21). However, the ALJ concluded that plaintiff "does not have the required adaptive deficits necessary to meet the requirements of listing 12.05." (*Id.*). Specifically, the ALJ noted that plaintiff "was able to live with and care for her very young daughter, without any other means of assistance." (Tr. 22). Further, the ALJ found that plaintiff "has the adaptive ability to manage her own household, take care of her child, and manage her own money. Furthermore, she successfully performed a

6

semiskilled job, only quitting when she became pregnant and had an automobile accident." (*Id.*). The ALJ also noted plaintiff's current part-time employment (14 hours weekly) at Goodwill sorting and folding clothing and plaintiff's testimony that "she could do this job full-time, but just wanted to work Mondays and Wednesdays." (Tr. 24). Moreover, the ALJ considered evidence that plaintiff is able to shop for groceries, cook, do laundry, do other household chores, maintain her own schedule of medical appointments, arrange for transportation to and from appointments, and pay her own bills. (Tr. 26).

Here, substantial evidence supports the ALJ's determination that plaintiff does not have the requisite deficits in adaptive functioning to meet Listing 12.05. Because this issue is dispositive of plaintiff's appeal, the Court will consider it first.

"*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 42 (4th ed., text rev. 2000). "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). Intellectual disability requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV at 49. *See also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (quoting DSM-IV at 49 for definition of deficits in adaptive functioning).

The record shows that although plaintiff attended high school on an individualized education plan ("IEP"), her eleventh grade IEP evaluator stated that she was "a great student" who was "well-liked by teachers." (Tr. 310). The evaluator indicated that plaintiff was successful in inclusive classrooms in history, English, math, and science. (*Id.*). Plaintiff's English teacher commented that plaintiff was "very lazy with her work" and "could do much better work if she put more effort into everything she does." (Tr. 317).

An evaluation from the vocational school that plaintiff attended for the last two years of high school stated that plaintiff "[w]orks hard in the classroom," "communicate[s] well with classmates and peers," and "is agreeable and polite." (Tr. 374). An adaptive behavior assessment performed in April 1999 as part of plaintiff's evaluation indicated that she showed strength in the areas of "personal living skills, which includes tasks such as eating and meal preparation, toileting, dressing, and personal self-care." (Tr. 382). Plaintiff "showed individual weaknesses in the areas of motor skills, community living skills, and broad independence," which included tasks such as assembling objects, sewing buttons on clothes, completing application forms, and negotiating bus schedules. (*Id.*).

Consultative psychologist Norman Berg, Ph.D., examined plaintiff for disability purposes in August 2001 when plaintiff was 19. (Tr. 388-93). Dr. Berg noted that plaintiff was able to take the bus and was neat and properly dressed. (Tr. 389). Plaintiff's judgment and insight were fair and she was cooperative throughout the interview. (*Id.*). Plaintiff was able to dress herself and attend to her personal hygiene. (Tr. 390). She was able to shop with a list, watch television, talk on the phone, read the Bible, attend church, and clean occasionally with assistance. (*Id.*). Dr. Berg opined that plaintiff had no limitations in her ability to understand and follow simple verbal directions; had no limitations in her ability to maintain attention and concentration while

8

doing simple, routine tasks; was able to relate adequately; would have mild limitations in her ability to relate to others in a work setting; functioned in a moderate to moderately slow manner; would have mild limitations in her ability to sustain her level of activity; and would have mild to moderate limitations in her ability to cope with routine job stress. (Tr. 393). Dr. Berg reported that plaintiff tested in the lower part of the borderline range of intelligence, and clinically she appeared to function in the borderline range. (Tr. 392).

In August 2012, plaintiff submitted a function report in which she stated that her conditions did not limit her ability to work. (Tr. 329). During a typical day, plaintiff would prepare meals for her daughter, change her daughter's clothes, wash dishes, sweep the floor, mop, and do laundry. (Tr. 330). Plaintiff indicated that she had no problems with personal care. (*Id.*). Plaintiff prepared her own meals and performed household chores. (Tr. 331). Plaintiff did her own shopping but indicated that she still needed help to pay bills, use a checkbook, and handle a savings account. (Tr. 332). Plaintiff's hobbies and social activities included reading the Bible, going to church twice a week, and talking on the phone every day. (Tr. 333). Plaintiff indicated she had no problems getting along with other people. (Tr. 334).

Consultative psychologist Richard Sexton, Ph.D., examined plaintiff for disability purposes in September 2012 when plaintiff was 30. (Tr. 407-14). He estimated plaintiff's level of intellectual functioning "to fall at the middle of the Borderline range (consistent with previous psychological testing.)" (Tr. 412). Dr. Sexton noted that plaintiff "maintains her own schedule of medical appointments and arranges for transportation to and from such appointments." (Tr. 408). Plaintiff stopped working in 2009 because she was pregnant. Plaintiff "got along well with coworkers and supervisors." (*Id.*). Plaintiff reported that she: (1) had no problems coping with work-related pressures; (2) received no poor performance reviews; (3) understood her job

9

tasks and responsibilities; (4) had no problems with attention/concentration or maintaining persistence and pace in the completion of work related duties; (5) made friends among coworkers; and (6) had no problems with excessive absenteeism. Plaintiff indicated that she switched jobs over the years for "money and opportunities." (*Id.*). Plaintiff told Dr. Sexton that during a typical day she dresses herself, eats, does chores, walks around the neighborhood, watches television, listens to music, reads, and goes to church or the park. (Tr. 409). Dr. Sexton noted that plaintiff has a few friends but tends not to socialize very often. Plaintiff established a good relationship with the examiner and was cooperative during the examination. (*Id.*). Dr. Sexton opined that plaintiff "was considered to be capable of making her own decisions affecting her own future, conducting her own living arrangements, and managing her own funds." (Tr. 411). Dr. Sexton noted that plaintiff "takes responsibility for paying her bills" and has "no difficulty distinguishing among coins/currency, or performing simple arithmetic involving dollar bills and change." (*Id.*). Dr. Sexton indicated that plaintiff "is accessing resources in the community adequately." (Tr. 412). Dr. Sexton opined that plaintiff would have no limitations in responding appropriately to supervisors and coworkers, no limitations in responding appropriately to work pressures, and would be able to understand and apply instructions in the workplace consistent with borderline intellectual functioning. (Tr. 413-14). As to plaintiff's ability to maintain attention, concentration, persistence, and pace, Dr. Sexton opined that plaintiff's depression and anxiety may at times cause her to "experience a subjective sense of reduced effectiveness" but were unlikely to cause "objective changes in a level prompting performance concerns by others." (Tr. 413).

In July 2013, psychologists Gene Harris, Ph.D., and Eckart Wallisch, M.A., evaluated plaintiff for the Butler County Board of Developmental Disabilities. (Tr. 417-20). Responses

10

provided by plaintiff's mother on the Vineland Adaptive Behavior Scales II indicated that plaintiff was "exhibiting a moderate deficit with regard to her overall adaptive functioning." (Tr. 419). Specifically, based on the responses of plaintiff's mother, plaintiff was assessed to have an age equivalency of 13 years in community living skills, 12 years in domestic skills, 8 years and 10 months in self-help skills, 8 years in written language skills, 7 years and 6 months in receptive language skills and leisure time activities, and 6 years and 7 months in expressive language, interpersonal relationships, and coping skills. (*Id.*).

At the administrative hearing in February 2015, plaintiff testified that she lives independently in an apartment with her 5-year-old daughter. (Tr. 41, 57). Her 10-year-old son lives with plaintiff's mother because plaintiff was unable to raise him at the time he was born and his mother now has custody. (Tr. 42). Plaintiff graduated high school, was able to read and write, and could perform simple math. (*Id.*). Plaintiff has been working at Goodwill Industries since June 2014 sorting clothes on Mondays and Wednesdays for a total of 14 hours a week. (Tr. 43-44). When asked why she was only working part-time, plaintiff responded: "I told my support coordinator that I only wanted to work two days and that was it." (Tr. 44). When asked why her prior employment as a full-time home health aide ended in 2009, plaintiff responded that she was pregnant, got into a car accident without insurance, and had to go to court. (Tr. 46). Plaintiff testified that she never returned to that job because she "had so much stuff going on with [her] pregnancy." (*Id.*).

Plaintiff testified that she sees her mother three to four times a week and has friends that she talks to and sees. (Tr. 57). Plaintiff leaves the house to go to work, go to the doctor and counseling, and go to church on Wednesdays and Sundays. (Tr. 57-58). Plaintiff takes her daughter to the park and visits her mother's house. (Tr. 58-59). Plaintiff is the primary caregiver

11

for her daughter and sees her son three to four times a week. (Tr. 59). Plaintiff testified that she likes to go bowling, goes to the library to read, and goes to the gym. (*Id.*). Plaintiff uses the computer at the library, watches television, and reads. (Tr. 60). Plaintiff takes care of her own personal grooming and has no problems taking care of her daughter. However, if plaintiff gets upset, she calls her mother for help with her daughter. (*Id.*). Plaintiff pays the bills and does the grocery shopping by herself. (Tr. 61). Plaintiff's driver's license is suspended so friends drive her to the store. (Tr. 58, 61). Plaintiff does her own cooking and cleaning. (Tr. 62). Plaintiff testified that she could do her job full-time, but she does not want to. (Tr. 65).

Based on this record, substantial evidence supports the ALJ's determination that plaintiff does not have listing-level deficits in adaptive functioning. As noted above, intellectual disability requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV at 49. The record contains substantial evidence that plaintiff did not have deficits in present adaptive functioning in any of these areas at the time of the ALJ's decision.

As to communication and social/interpersonal skills, plaintiff's vocational school evaluation stated that she "communicate[s] well with classmates and peers" and "is agreeable and polite." (Tr. 374). As the ALJ correctly noted, Dr. Berg opined that plaintiff was able to relate adequately and would have only mild limitations in her ability to relate to others in a work setting. (Tr. 26, 393). In her self-report of her functioning in August 2012, plaintiff stated that she went to church twice a week, talked on the phone every day, and had no problems getting along with other people. (Tr. 334). Dr. Sexton noted that plaintiff "got along well with coworkers and supervisors" and made friends among coworkers. (Tr. 408). At the

12

administrative hearing, plaintiff testified that she sees her mother three to four times a week and has friends that she talks to and sees. (Tr. 57). Thus, the record contains substantial evidence supporting the ALJ's determination that plaintiff does not have deficits in the areas of communication and social/interpersonal skills.

As to self-care, home living, and self-direction, the ALJ found that plaintiff "is able to grocery shop by herself, prepare food, wash dishes, launder clothing, vacuum, sweep, dust, and take out the garbage." (Tr. 23). Further, the ALJ found that plaintiff has "only a mild restriction" in activities of daily living. (*Id.*). Substantial evidence supports these findings. Specifically, plaintiff's vocational school evaluation indicated that she showed strength in the area of personal living skills. (Tr. 382). Dr. Berg noted that plaintiff was able to dress herself and attend to her personal hygiene. (Tr. 390). In her self-report of her functioning in August 2012, plaintiff stated that during a typical day, she would prepare meals for her daughter, change her daughter's clothes, wash dishes, sweep the floor, mop, and do laundry. (Tr. 330). Plaintiff stated that she had no problems with personal care and she prepared her own meals, performed household chores, and did her own shopping. (Tr. 331-32). Plaintiff reported similar abilities in the areas of self-care and home living to Dr. Sexton. (Tr. 409). Dr. Sexton opined that plaintiff "was considered to be capable of making her own decisions affecting her own future, conducting her own living arrangements, and managing her own funds." (Tr. 411). As the ALJ correctly noted, plaintiff testified at the administrative hearing that she lives independently, takes care of her own personal grooming, and has no problems taking care of her daughter. (*See* Tr. 26, 41, 57, 60). Further, plaintiff testified that she pays the bills, does the grocery shopping by herself, and does her own cooking and cleaning. (*See* Tr. 26, 61-62). Thus, the record contains

13

substantial evidence supporting the ALJ's determination that plaintiff does not have deficits in the areas of self-care, home living, and self-direction.

As to use of community resources, Dr. Berg noted that plaintiff was able to take the bus for transportation. (Tr. 389). As the ALJ noted, Dr. Sexton likewise reported that plaintiff arranged for transportation to and from medical appointments. (Tr. 26, 408). Dr. Sexton also indicated that plaintiff "is accessing resources in the community adequately." (Tr. 412). Plaintiff testified at the administrative hearing that goes to the library to read and goes to the gym. (Tr. 59). She is able to call her mother for help with her daughter when needed. (Tr. 60). Thus, the record contains substantial evidence supporting the ALJ's determination that plaintiff does not have deficits in the use of community resources.

The ALJ also reasonably determined that plaintiff's academic record and skills do not support an intellectual disability prior to age 22. (Tr. 22). Although plaintiff attended high school on an IEP, her IEP evaluator indicated that she was "a great student" who was successful in inclusive classrooms in history, English, math, and science. (Tr. 310). As the ALJ correctly noted, Dr. Berg opined that plaintiff had no limitations in her ability to understand and follow simple verbal directions and no limitations in her ability to maintain attention and concentration. (Tr. 26, 393). Dr. Sexton noted that plaintiff "takes responsibility for paying her bills" and has "no difficulty distinguishing among coins/currency, or performing simple arithmetic involving dollar bills and change." (Tr. 411). Plaintiff reported reading as a hobby. (Tr. 333, 409). The ALJ properly relied on plaintiff's testimony at the administrative hearing that that she graduated high school, was able to read and write, and could perform simple math. (*See* Tr. 22, 24, 42). Plaintiff further testified that she is able to use the computer at the library and reads as a hobby. (Tr. 59-60). Thus, the record contains substantial evidence supporting the ALJ's determination

14

that plaintiff does not have deficits in functional academic skills consistent with an intellectual disability.

As to work, plaintiff stated in her August 2012 self-report that her conditions did not limit her ability to work. (Tr. 329). The ALJ properly relied on plaintiff's report that she successfully held jobs until 2009 when she stopped working because she was pregnant. (*See* Tr. 26, 408). Plaintiff told Dr. Sexton that she: (1) had no problems coping with work-related pressures; (2) received no poor performance reviews; (3) understood her job tasks and responsibilities; (4) had no problems with attention/concentration or maintaining persistence and pace in the completion of work related duties; (5) made friends among coworkers; and (6) had no problems with excessive absenteeism. (Tr. 408). Plaintiff indicated that she only switched jobs over the years for "money and opportunities." (*Id.*). The ALJ reasonably noted plaintiff's testimony at the administrative hearing that she currently works part-time and that she could do her job full-time but does not want to. (*See* Tr. 26, 43-44, 65). Thus, the record contains substantial evidence supporting the ALJ's determination that plaintiff does not have deficits in the area of work.

As to leisure, the ALJ properly noted that plaintiff "loved going to church" twice a week, talked on the phone daily, and went shopping. (*See* Tr. 22-23, 332-34). Plaintiff also indicated in her self-report that she read the Bible as a hobby. (Tr. 333). Further, plaintiff reported to Dr. Berg that she was able to watch television, read the Bible, and attend church. (Tr. 390). Plaintiff told Dr. Sexton that during a typical day she walks around the neighborhood, watches television, listens to music, reads, and goes to church or the park. (Tr. 409). At the administrative hearing, plaintiff's testimony confirmed many of these leisure activities. (*See* Tr. 58-60). Plaintiff also testified that she likes to go bowling, goes to the library to read and use the computer, and goes

to the gym. (Tr. 59). Thus, the record contains substantial evidence supporting the ALJ's determination that plaintiff does not have deficits in the area of leisure.

As to health and safety, plaintiff indicated in her August 2012 self-report that she did not need help or reminders to take her medicine. (Tr. 331). The ALJ properly noted Dr. Sexton's report that plaintiff maintains her schedule of medical appointments. (*See* Tr. 26, 408). At the administrative hearing, plaintiff did not indicate any difficulties in attending medical or counseling appointments. (*See* Tr. 57-58). Thus, the record contains substantial evidence to support the ALJ's determination that plaintiff does not have deficits in the areas of health and safety.

On appeal, plaintiff relies on the July 2013 evaluation of Mr. Wallisch and Dr. Harris, in which they found that plaintiff was "exhibiting a moderate deficit with regard to her overall adaptive functioning" based on the responses provided by plaintiff's mother on the Vineland Adaptive Behavior Scales II. (Doc. 10 at 9; Tr. 419). However, this finding is inconsistent with the substantial evidence described above that supports the ALJ's determination that plaintiff does not have deficits in adaptive functioning that manifested before age 22. Further, even if the opinion of Dr. Harris and Mr. Wallisch or the other records cited by plaintiff on appeal could support a finding of deficits in adaptive functioning, this does not change the fact that the substantial evidence described above supports the ALJ's decision. As the Sixth Circuit has explained, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). *See also Her v. Commissioner of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the

evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

Based on the foregoing, substantial evidence supports the ALJ's determination that plaintiff does not have the requisite deficits in adaptive functioning for purposes of Listing 12.05. Accordingly, the ALJ did not err in determining that plaintiff does not meet Listing 12.05C and plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED**.

Date: 5/9/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DONNETTA E. DOTSON,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:16-cv-680
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).